The undersigned have reviewed the prior Decision and Order based upon the briefs of the parties and the record of the proceedings before Deputy Commissioner Dollar. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Decision and Order and enters the following Decision and Order.
***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. In the fall semester of 1995, the plaintiff was a junior biology major at the University of North Carolina at Wilmington (hereinafter UNC-W) where he transferred after completing two years at Bladen Community College.
2. Prior to October of 1995, the plaintiff saw a flyer for a backpacking trip to Pisgah National Forest over fall break which was sponsored by the Outdoor Discovery Program at UNC-W. He paid $55.00 for equipment use and transportation for the trip. The plaintiff had no prior camping experience.
3. Brock Snyder established the Outdoor Discovery Center at UNC-W. He developed standards and training for trip leaders, who were university students, based upon standards used by other universities for similar programs. At the time of the hearing, Mr. Snyder had led the program for six years. In addition, he had completed training with the National Outdoor Leadership School and the Association of Experiential Education (Hereinafter AEE).
4. The training program for trip leaders with the Outdoor Discovery Program at UNC-W included a one semester program with leadership and technical training. The training program consisted of one-hour classes on a twice per month basis for one semester. Trip leader trainees received instruction in safety, equipment, people and the environment. Training also stressed checking the weather. Before and after the training, the trainees are taken on outdoor trips under the supervision of other trip leaders. At the conclusion of this training, trip leaders were paid as employees of the UNC-W program and for each trip. The trip leaders then would be paired with experienced leaders and would serve an apprenticeship. Gus Hemmer and Jessica Classen participated in this training and became student trip leaders in the Outdoor Discovery Program. The training program offered by UNC-W was consistent with the standard within the university setting and the AEE.
5. Trip leaders Gus Hemmer and Jessica Classen held two meetings for the nine participants of the trip. In the first meeting, the campers were instructed on the trip logistics, behavior expectations, minimum impact camping, obtaining water, site selection, types of campsites, proper clothing, safety and goals for the trip. At the second meeting, participants were instructed on equipment use, food, bathroom calls, packing, trip preparation and trail etiquette. Medical forms and risk release forms were also submitted at that time. The participants were assigned their tent-mates for the trip.
6. Plaintiff was assigned to share a tent with two other students for the three-day hiking trip.
7. Nine students including the plaintiff and the two trip leaders traveled in a van on October 13, 1995 to the Shining Rock Wilderness Area in the Pisgah National Forest in South Western North Carolina. The group hiked two and one-half miles on the first day. While on this four-hour hike, campers were given pointers on pristine sites. When they arrived at the campsite, Gus Hemmer discussed moving rocks, checking for dead limbs or leaning trees, and vegetation. There was a special emphasis on detecting "widow-makers" or dead wood with a potential for falling. Gus Hemmer obtained water while Jessica Classen helped campers with their tents. The area was very pristine with a lot of Rhododendron and roots in the campsite. The first day's campsite was chosen in order to teach the students about minimum impact camping at a pristine site.
8. On the second day, it rained heavily and the campers had to set up tarps in order to cook their dinner at the campsite. This campsite was a moderate-use site.
9. On October 15, 1995, the group hiked about seven miles. The campsite was a well-established open site in a low bowl-shaped area above a river with hard packed soil and a fire ring. It was approximately one quarter of a mile from the parking lot where the van was parked. The campers arrived at this site in the afternoon after a clear day of hiking. They took advantage of the sunlight to dry out items which had gotten wet the day before.
10. Gus Hemmer surveyed the site for hazards around the tents which the student campers had set up. He did not observe any dead trees or limbs and there were no visible defects in the trees around the tents. Before dark, the camp was all set out. After dinner, everyone turned in by around 9:00 p.m.
11. Around midnight, the plaintiff was awakened by heavy winds. There was a crash, and a tree fell across the plaintiff's tent landing across his right side. As a result of being struck by the fallen tree, the plaintiff's pelvis was fractured in five places and his urethra was severed.
12. Gus Hemmer responded to the situation. After interviewing the plaintiff and after making an assessment of his condition, the trip leaders assembled three pack frames to make a stretcher on which the plaintiff could be carried to the van which was in the nearby parking area.
13. The plaintiff was driven by the group to Transylvania Community Hospital in Brevard.
14. At about 3:00 a.m., the group left the plaintiff at the hospital and went back toward the trail head. There was evidence of very high winds. In fact, on U.S. Highway 276 within a mile or two of the trail head parking area, the road was blocked by three large hardwood trees which had fallen across the road. These trees were living trees and not rotten or dead trees. They were too large to be moved by the group so the group drove to a nearby ranger station parking area and slept in the van until they were able to return to the trail head.
15. The plaintiff was stabilized at Transylvania Community Hospital and transferred to Memorial Mission Hospital in Asheville where he was admitted for eight days. The plaintiff was then transported to his home by ambulance, after which he began treatment with Dr. Garrett Franzoni in Fayetteville. The plaintiff was confined to bed for the first four weeks after the accident. During the remainder of 1995, his mother took a leave from her job to care for her son and assisted him with personal hygiene. Furthermore, the plaintiff was unable to return to school after the injury. Consequently, he had to withdraw from school in the fall semester of 1995.
16. Dr. Franzoni referred the plaintiff to Dr. George Webster, a urologist at Duke University Medical Center. The plaintiff was admitted at Duke on May 12, 1996, and underwent a posterior urethroplasty on the following day. He was released from the hospital on May 15, 1996. Plaintiff experienced a number of problems with his catheter. The plaintiff has also experienced some numbness in his right calf and foot since his urethroplasty.
17. According to eyewitness testimony, the tree which fell on the plaintiff was living prior to falling and had bark, green wood and was not hollow. It is impossible to determine whether the splitting or other apparent damage to the tree existed before the incident or occurred as a result of the fall. Mr. Hemmer's inspection the day before revealed that all trees around the perimeter of the campsite including that tree were living trees which were not anticipated to fall. Mr. Hemmer is knowledgeable in inspecting campsites and is capable of determining whether a tree is dead or rotten.
18. Brock Snyder who was the director of the Discovery Outdoor Program had set up and run the program. He is an expert in these programs and obtained a degree in Parks and Recreation and a masters degree in College Student Development. Mr. Snyder has extensive experience having spent 800-900 days and 500 nights in the outdoors. He has taught many courses including ropes, backpacking and kayaking. He is quite familiar with the standard of care in the field of university outdoor programs and wilderness trips. He has attended the National Outdoor Leadership School and is a member of the AEE which is the premier standard setting organization in the field. As an AEE member, he has participated in accreditation reviews of other university outdoor programs. Mr. Snyder has been on the same loop where plaintiff was injured in the Shining Rock Wilderness ten to twelve times.
19. The accepted practice was for trip leaders to check for obvious defects or signs that trees or limbs could fall. After reviewing all of the testimony and the exhibits, Mr. Snyder's opinion was that the training program and the trip leaders' behavior met the standard of care for a university outdoor program.
20. Sandy Kohn, the director and founder of the UNC-Charlotte Outdoor Adventure Program, is an expert in camping and outdoor adventure programs. Mr. Kohn is on the AEE board and has served on 4-5 peer reviews for the organization which take 1 to 3 days to review for accreditation. In that capacity, Mr. Kohn reviewed the UNC-W program and found no deficiencies in the training or practices of the student leaders.
21. Mr. Kohn indicated that it is standard in university programs to use student trip leaders and further indicated that some trips are entirely run by students. He is familiar with the Shining Rock Wilderness area and the related weather history. According to Mr. Kohn, trees should be inspected for any obvious defect which would affect their stability in an area where tents would be erected.
22. After examining all of the testimony and the exhibits, Mr. Kohn found that the trip leaders' training and site inspection and other behavior met the safety and other standards of university outdoor programs.
23. The expert testimony of Mr. Buck Tate which indicates that the trip leaders violated the standard of care and were negligent is given less weight than the testimony of Mr. Kohn and Mr. Snyder. Mr. Tate's testimony concerned forestry, Boy Scout and National Guard programs and his own personal opinions. He is not familiar with university outdoor programs and the applicable standard of care. He has not attended the National Outdoor Leadership School nor is he a member of AEE. Moreover, he has no experience is accrediting university outdoor programs.
24. Trip leaders Gus Hemmer and Jessica Classen had the duty pursuant to the appropriate standard of care to inspect the campsites and perimeter to ensure the safety of the campers under their supervision. On October 15, 1995, the actions and behavior of Gus Hemmer and Jessica Classen were appropriate under the applicable standard of care for university outdoor programs. They took appropriate steps to survey the campsite and to determine whether there were any diseased or defective trees in the vicinity.
25. UNC-W's outdoor program met the standards for accredited university outdoor programs. Furthermore, trip leaders' training and site inspection and other behavior met the safety and other standards of university outdoor programs. Therefore, neither UNC-W nor the trip leaders breached any duty owed to plaintiff. Furthermore, the trip leaders could not have foreseen that the living tree adjacent to the plaintiff's campsite would break or fall and injure the plaintiff on October 15, 1995.
26. The trip leaders were not negligent in their conduct and the injury suffered by plaintiff was not proximately caused by the actions of the trip leaders.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
The accident of October 15, 1995 for which the plaintiff claims damages did not result from negligence on the part of Gus Hemmer and/or Jessica Classen. Therefore, plaintiff's is not entitled to damages for his injury. N.C. GEN. STAT. § 143-291 et seq.
***********
Based upon the foregoing findings of fact and the conclusion of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 ORDER
1. The plaintiff's claim for damages as a result of the accident of October 15, 1995 is hereby, and the same shall be, Denied.
2. Defendant shall bear the costs due the Commission for the initial hearing before the Deputy Commissioner. Each side shall bear its own costs for the hearing before the Full Commission.
S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
DCS:nwg